The opinion of the court was delivered by
Manning, C. J.
The relator was elected parish judge of the parish •of Carroll in November 1876. His term of office was two years. At •that time the salary of the office to which he was elected was twenty-five hundred dollars per annum. In April 1877 this salary was reduced by -a legislative act to seventeen hundred and fifty dollars. The relator de *143 manded of the Auditor of Public Accounts warrants for nine hundred and thirty-seven dollars and fifty cents, which is the unpaid residue of his salary for 1877, computed at the rate of twenty-five hundred dollars per annum. The Auditor refused to issue them, and this proceeding by mandamus was taken to compel his compliance. The mandamus was made peremptory by the lower judge.
The respondent resists the demand upon the ground that the salaries of parish judges are not permanently fixed by the constitution, but are expressly made variable, and subject to legislative alteration. This is true. It was perfectly competent for the legislature to reduce the salaries of these officers. But the question here presented is — can such legislative reduction of salary operate upon the incumbents who took office prior to the reduction, or must its operation be postponed to the close of their term. Or to state it more broadly, can the legislature alter the salary of a judge during his term, and destroy or impair the right he has to the salary, such as it was fixed by law at the time he was inducted into office.
We held in Collens v. Jumel, 30 Annual, 861 that the legislature could not deprive a judge of his salary by abolishing his office. Oan it retain the office, and dimmish the salary quoad the officer who was elected under a different law, fixing a different rate of compensation ?
Our governments, both State and Federal, recognize three distinct departments — all co-ordinate — each independent in its own sphere. It has been always thought one of the wisest maxims, held and enforced by those sages, whom with filial reverence we are wont to call the father's of our republic, that the independence of the judiciary could in no wise be impaired — that its freedom of motion, in that orbit prescribed for it by the organic law of its being, could by no device be hampered. They had not forgotten that when the mother-country was struggling in those throes from which has emerged her ‘liberty regulated by law,’ the greatest instrument of oppression in the hands of the crown was its control over the judges through the precarious tenure of their office, and their absolute dependence upon the sovereign for their annual stipends.
To prevent a recurrence of those and kindred evils, the judiciary was made from the beginning of our government equal to the executive, equal to the legislature, in extent of power and scope of authority in its own sphere. And experience has amply justified the wisdom of those seers who thus erected a barrier to the encroachments of executive power on the one hand, which always seeks to aggrandize itself, and on the other planted a rock upon the solid shore of judicial independence, against which the rushing and passion-tossed waves of popular or legislative frenzy beat upharming.
*144 It would be an empty form — a deceitful promise — to assure independence to the judiciary, if that independence could be at once destroyed by the exercise of a power fatal to its existence. Hence it has been held that the salary of a judge is not taxable, since that would be a diminution pro tanto of it. New Orleans v. Lea, 14 Annual, 197. In the present case, the power attempted to be exercised is a diminution on a larger scale. If, indeed, a judge’s salary can be reduced by a sum however small, there is no limit to its diminution, and thus by reducing it to one dollar or other insignificant sum per annum, a removal would be practically effected which the constitution has provided for in another way.
The Pennsylvania court, in an opinion replete with wisdom, observes ' that the judiciary, from the nature of its functions, will always be the least dangerous to the political rights of the constitution, because it has less capacity or power to injure them. The executive dispenses honours and holds the sword — the legislature commands the purse and prescribes the rules by which the duties and rights of citizens are regulated. The j udiciary has no influence over either the sword or the purse. It may be said to have neither force nor will, but merely judgment, and this shews that being the weakest of the three departments of power, it can never attack with success either of the other two, and that all possible care is requisite to enable it to defend itself against their attacks. Com. v. Mann, 5, Watts & Serj. 403.
The act of April 1877 can affect only the parish judges who have been elected since its passage. The relator is not in that category, and is entitled to his salary at the rate fixed by the law in force at his election and qualification.
But the sum appropriated by the legislature is not sufficient to pay the relator’s salary at the larger rate, and we cannot order the Auditor by mandamus to warrant for more than has been appropriated. While • therefore we think the relator’s salary could not legally be reduced during the term which had commenced prior to the act reducing it, we must refuse the mandamus because there is no appropriation against which the Auditor can warrant.
The judgment of the lower court is avoided and reversed and the application of the relator for a mandamus is rejected at his costs.